a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| SUKHDEV SINGH,<br>Petitioner | CIVIL DOCKET NO. 1:20-CV-763-P |
| VERSUS | JUDGE DRELL |
| D. C. COLE, *ET. AL.*,<br>Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1), and a Motion Temporary Restraining Order (ECF No. 1), filed by Petitioner Sukhdev Singh ("Singh"). Singh is a detainee in the custody of the Department of Homeland Security ("DHS") and Bureau of Immigration and Customs Enforcement ("ICE").

Because the Court lacks jurisdiction over Singh's claims, his Motion for Temporary Restraining Order (ECF No. 1) should be DENIED and the Petition (ECF No. 1) should be DISMISSED WITHOUT PREJUDICE.

## I.  Background

Singh is a native and citizen of India. ECF. No. 1 at 4. He was denied asylum and ordered removed from the United States on March 10, 1999. *See* ECF No. 1 at 8; 16-1 at 1. Singh was released on an Order of Supervision and has allegedly been reporting to DHS since April 3, 2006. ECF No. 1 at 8; 1-7.

Singh alleges that he has worked and paid taxes in the United States for over 20 years. ECF No. 1 at 7; 1-4. Singh's wife, Rajwinder Kaur ("Kaur"), became a

naturalized citizen on September 12, 2013. They were married on October 17, 2014[1]. ECF Nos. 1-2, 1-3. Singh and Kaur have three children, all born in the United States. ECF No. 1 at 7. Singh's oldest child is eight years old and suffers from "cerebral palsy, encephalopathy, chronic lung disease, and seizure disorder, among other serious medical conditions." ECF No. 1 at 7. The child cannot walk and is entirely dependent on her parents. ECF No. 1 at 7. The youngest child is four years old and "is also developmentally delayed and has congenital chloride diarrhea, a chronic condition." ECF No. 1 at 7; No. 1-6; No. 6-2.

In February 2019, Kaur filed an I-130 Petition for Alien Relative form ("I-130") with the U.S. Citizenship and Immigration Services ("USCIS") for Singh to become a lawful permanent resident. ECF No. 1-9 at 2. The I-130 was transferred to the National Benefits Center for processing on October 2, 2019. *See id.* The application is still pending. ECF No. 1 at 8.

On November 7, 2019, Enforcement and Removal Operations ("ERO") submitted a travel document request to the Consulate of India. ECF No. 16-1 at 2. A travel document was issued on May 1, 2020. *See id.* According to Singh, on June 8, 2020, after 14 years of supervision and while the I-130 was pending, "immigration officials suddenly took the Petitioner into custody without warning" at 6:30 a.m. ECF No. 1 at 8; No. 22 at 1.

In his Petition, Singh argues his detention and prospective removal violate the Immigration and Nationality Act ("INA") and applicable regulations, the Due Process

---

[1] The Certificate of Naturalization lists Kaur's marital status as "married," but Singh alleges that they were married the following year. ECF No. 1-3 at 2.

Clause of the 14th Amendment, the Administrative Procedures Act ("APA"), and the Suspension Clause.

The Government filed a Response arguing that the Petition should be denied on the grounds that Singh's detention is lawful and his removal imminent. ECF No. 16 at 1. It also argues that the Court lacks jurisdiction to prevent Singh's removal from the United States. ECF No. 16 at 1.

Because Singh's removal was imminent, the Court ordered that he not be moved outside of the Western District of Louisiana pending further review of his Petition. ECF No. 18. A hearing was conducted (hereinafter, "the Hearing"), and the matter was taken under advisement. ECF No. 23.

## II.   Law and Analysis

### A.   Preliminary Injunction

Singh seeks a temporary restraining order, injunction, and ultimately, habeas relief ordering his release from custody and enjoining the Government from removing him while he attempts to secure a provisional waiver. For a preliminary injunction to be granted, a petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *See Bhatia v. Warden*, 1:16-CV-1125, 2017 WL 1026054, at *1 (W.D. La. Jan. 24, 2017), *report and recommendation*

3

*adopted*, 2017 WL 1017634 (W.D. La. Mar. 15, 2017) (citing *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria." *Black Fire Fighters Ass'n*, 905 F.2d at 65.

**B.    Revocation of Orders of Supervision under the INA.**

Singh states that remained under an order of supervision from 2006 through 2020. ECF No. 1 at 8. The Government may revoke an alien's release under an order of supervision and return the alien to custody "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Thereafter, if the alien is not released from custody, the provisions of § 241.4 shall govern the alien's continued detention pending removal. *See id.*

Pursuant to § 241.4(l), release can be revoked "when, in the district director's opinion, revocation is in the public interest," including when the revoking official opines that: the purposes of release have been served; the alien violates any condition of release; it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. Under § 241.4(g)(3) and (4),

4

no custody review is required, and an alien shall not be released when a travel document has been obtained and the Government is ready to execute the order of removal.  8 C.F.R. § 241.4(g)(3), (4).

### C.    Unlawful Presence Waivers

Singh seeks an order enjoining his removal from the United States while he pursues an unlawful presence waiver.  An alien "who has been ordered removed" is inadmissible for re-entry to the United States for five, ten, or twenty years from the date of departure or removal, depending on whether the alien is removed upon arrival, is removed after arrival, has already been removed once before, or has been convicted of an aggravated felony.  18 U.S.C. § 1182(a)(9)(A)(i-ii); 8 C.F.R. § 212.2(a). An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United States as a lawful permanent resident.  8 U.S.C. § 1182(a).  This inadmissibility may be waived by the Secretary of Homeland Security's consent to reapply for admission under 8 U.S.C. § 1182(a)(9)(A)(iii), but the waiver application process may take well over one year.  *See* Provisional Unlawful Presence Waivers of Inadmissibility for Certain Immediate Relatives, 78 FR 536-01, 2013 WL 24532 (Jan. 3, 2013).

Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for this waiver of admissibility was required to first depart from the United States.  *Id.*  In 2013, DHS promulgated a rule "to allow certain immediate relatives of U.S. Citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular

5

processing of their immigrant visa applications." *Id.* ("[M]any immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa."). The rule was promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," *id.* at 536, and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]," *id.* at 568.

In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens like Singh with final removal orders. *See* Expansion of Provisional Unlawful Presence Waivers of Inadmissibility, 81 FR 50244-01, 2016 WL 4037178 (July 29, 2016). The process first requires the completion of an I-130 form, which establishes a qualifying relationship to a U.S. citizen. *See* 78 Fed. Reg. 536-01 at 547-48. After the I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, pursuant to 8 C.F.R. § 212.2(j), can be conditionally approved while the individual remains in the United States. *See* 78 Fed. Reg. 536-01 at 547-48. If the I-212 is conditionally approved, the individual must complete Form I-601A, an application for a provisional unlawful presence waiver. *See id.; see also* 8 C.F.R. § 212.7(e)(4)(iv). Once the waiver is approved, the individual departs from the United States to obtain the immigrant visa, executing the prior removal order. *See* 8 U.S.C. § 1101(g). However, even a pending or approved provisional unlawful presence waiver does not constitute a grant of a lawful immigration status or a period of stay authorized by the Secretary. 8 C.F.R. § 212.7(e)(2)(i).

Singh claims that he is being denied the right to effectively pursue the waiver process by his detention and imminent removal. Singh seeks a stay of his removal and an order releasing him from custody while he attempts to secure a waiver.

**D.    The Court lacks jurisdiction under § 1252.**

The REAL ID Act, Pub.L. 109-13, 119 Stat. 231, "divested federal [district] courts of jurisdiction over § 2241 [habeas] petitions attacking removal orders." *Rosales v. Bureau of Immigration & Customs Enf't*, 426 F.3d 733, 736 (5th Cir. 2005); *Perry v. Barr*, 4:19-CV-1302, 2019 WL 6255330, at *3 (S.D. Tex. Nov. 22, 2019). Pursuant to the Act, "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means of judicial review of an order of removal entered or issued under any provision of [Chapter 12]." 8 U.S.C. § 1252(a)(5); *Shah v. Dir., Jackson Par. Correctional Ctr.*, 3:19-CV-1164, 2019 WL 4254139, at *2 (W.D. La. Sept. 6, 2019).

Section 1252(b)(9) further provides:

Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). And, Section 1252(g) provides:

Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or

> claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

28 U.S.C. § 1252(g).

As all-encompassing as those provisions may seem, courts have noted several limitations. The Supreme Court recognized that § 1252(g) does not cover "the universe of deportation claims." *Reno v. American–Arab Anti–Discrim. Cmte.*, 525 U.S. 471, 943 (1999)). Section 1252(g) applies only to three discrete actions that the Attorney General may take: the "decision or action" to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Id.* (emphasis in original). "There are of course many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final order that is the product of the adjudication, and to refuse reconsideration of that order" which would fall outside of the scope of § 1252(g). *Id.*

Singh emphasizes that he is not challenging the order of removal. ECF No. 21 at 6. The process Singh seeks to pursue actually assumes the existence of a removal order. *Id.* Singh's due process claim is based on his contention that he is entitled to remain in the United States to complete the provisional waiver application process, and that the Government is denying him that opportunity.

Because the REAL ID Act deprives district courts of "jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to . . . execute removal orders," 8 U.S.C. § 1252(g), the Court must determine whether

Singh's Petition and request for injunction arise from the decision or action to execute his 1999 order of removal.

Neither Singh nor the Government presented the Court with any cases from this Circuit specifically addressing whether § 1252(g) precludes a district court from exercising jurisdiction over a case where the petitioner wishes to delay his removal in order to avail himself of the provisional waiver process. However, the United States Court of Appeals for the Fifth Circuit has determined that a request for a judicial stay of deportation, which should be treated as a request for injunction, is "connected 'directly and immediately' with the Attorney General's decision to commence removal proceedings." *Idokogi v. Ashcroft*, 66 F. App'x 526 (5th Cir. 2003). That court has also found that § 1252(g) deprived a district court of jurisdiction over a petitioner's request for injunctive relief to stay his removal proceedings. *Fabuluje v. Immigration & Naturalization Agency*, 244 F.3d 133 (5th Cir. 2000) (per curiam).

At the Hearing, the Government cited *Formusoh v. Gonzales*, 3-07-CV-0128K, 2007 WL 465305 (N.D. Tex. Feb. 12, 2007) and *Ghering v. McMahon*, 9:05-CV-7, 2005 WL 8160849 (E.D. Tex. Aug. 15, 2005) as cases directly dealing with the issue presented by Singh.

In *Formusoh*, a native of Cameroon and a citizen of Germany entered the United States in 2004 under the Visa Waiver Program. Less than five months later, the petitioner married a United States citizen, who filed an I-130 petition in an attempt to obtain permanent residence for her husband. However, the wife subsequently withdrew the petition, "admitting that her marriage to petitioner was

9

bogus." *Id.* at *1.  In 2006, ICE ordered the petitioner removed from the United States for remaining in the country longer than authorized by law.  *Id.*  When the petitioner appeared at the immigration office, he was taken into custody on the outstanding removal order.  *Id.* at 2.

The petitioner filed an application for writ of habeas corpus seeking immediate release on bond and a preliminary injunction preventing his removal from the United States.  The petitioner argued that the court had jurisdiction to determine whether respondents improperly applied federal immigration law by issuing a removal order "when the facts of th[e] case clearly show that a valid I-130 Petition for Alien Spouse and I-485 Application for Adjustment of Status were pending and permitted under § 245(c)(4) of the INA[.]" *Id.*   The district court noted that it was "unaware of any exception to the REAL ID Act for aliens seeking to avoid a final removal order because of the pendency of an I-130 petition or an I-485 application for adjustment of status.  Absent a statute or controlling legal authority that creates an exception to the jurisdiction stripping provisions of the REAL ID Act, this court lacks subject matter jurisdiction over petitioner's claims." *Id.* at 2.[2]

In *Gehring,* the petitioner illegally re-entered the United States after being deported.  Several years later, she married a U.S. citizen, who submitted an I-130 Petition for Alien Relative to USCIS.  *Id.* at 2.  The petition was approved, and the petitioner then submitted a Form I-212 and filing fees to USCIS.  Approximately

---

[2] As Singh's attorney pointed out at the Hearing, the *Formusoh* case predates the provisional waiver process implemented by DHS.  Moreover, *Formusoh* is factually distinguishable from Singh, as that petitioner's spouse apparently withdrew the I-130 because the marriage was "bogus." *Id.* at *1.

eight months later, the petitioner attended a final interview with her husband. Upon her arrival at the interview, she was detained and informed that she was to be removed from the United States based on the reinstatement of her 1994 deportation order. She filed motions for a temporary restraining order and a preliminary injunction to prevent her removal from the United States, as well as a petition for writ of habeas corpus challenging the removal order. *Id.* at 2. Because the petitioner was challenging the order of removal, the case was transferred to the Fifth Circuit pursuant to the REAL ID Act.[3]

Singh relies on cases from district courts in other circuits that directly addressed the question of jurisdiction with respect to the REAL ID Act and the provisional waiver process. In *Wanrong Lin v. Nielsen*, 377 F.Supp.3d 556, 562 (D. Md. 2019), *appeal dismissed by parties*, 19-1714, 2019 WL 7494393 (4th Cir. Sept. 6, 2019) (citing *De Jesus Martinez v. Nielsen*, 341 F.Supp.3d 400, 408 (D.N.J. 2018), *appeal dismissed by parties,* 18-3478, 2019 WL 2064450 (3d Cir. Feb. 15, 2019)); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 955 (S.D.N.Y. 2018), *appeal dismissed by parties*, 18-2926, 2018 WL 6920377 (2d Cir. Oct. 5, 2018); and *You v. Nielsen*, 321 F. Supp. 3d 451, 458-59 (S.D.N.Y. 2018)), the district courts found that § 1252 did not bar jurisdiction over the petitioners' requests for habeas relief and a stay while pursuing provisional waivers.

In the most recent of these cases, *Lin v. Nielsen*, Petitioner Lin's wife became a naturalized citizen in 2004, and she and Lin were married. *Id.* at 561. Lin was

---

[3] *Gehring* predates the implementation of the provisional waiver process.

11

denied asylum in 2008, and his motion to reopen was denied. *Id.* In 2016, Lin and his wife began the provisional waiver application process by submitting an I-130 with USCIS. *Id.* An interview was scheduled as part of the process, and Lin was arrested by ICE agents at the interview. *Id.* Lin filed a § 2241 petition and motion for injunction to stay Lin's deportation while he completed the provisional waiver process. *Id.*

Lin argued that he had a due process right to complete the application process, and DHS arbitrarily denied him of that right. *Id.* The court found that Lin did not challenge whether or how the Attorney General may decide to remove him; and Lin, like Singh, conceded that his removal was inevitable. *Id.* at 563. Lin asked "only for the opportunity to complete the provisional waiver process provided for in DHS's own regulations." *Id.* The court concluded that Lin raised a purely legal question that did not challenge the Attorney General's discretionary authority. *Id.* Therefore, the court determined it had jurisdiction to determine the merits of the case. *Id.*

In *De Jesus Martinez, Calderon,* and *You*, district courts also determined that the REAL ID Act did not strip them of jurisdiction over a request for a stay of removal and an order releasing the petitioner from custody until the petitioner exhausted the provisional waiver process. In those cases, as in Singh's case, it was argued by the Government that a request for stay of removal pending exhaustion of the waiver process interfered with the execution of a removal order. However, these courts found that the petitioners' challenge was not to ICE's prosecutorial discretion in executing removal orders, but to the legal authority of ICE to exercise such discretion when the

subject of the removal order also has a right to seek relief made available by the DHS, the specific purpose of which was to allow families to stay together in the United States during the process. *See De Jesus Martinez*, 341 F.Supp.3d at 406; *Calderon*, 330 F.Supp.3d at 954; *You*, 321 F.Supp.3d at 456-58.

On the other hand, several district courts—including one within this Circuit— have reached the opposite conclusion. *See Karr v. Meade*, 447 F.Supp.3d 1293, 1302 (S.D. Fla. 2020)[4] (allowing petitioners to remain in the United States during the pendency of their provisional waiver application process would override the Attorney General's individualized discretion to execute a valid removal order); *Probodanu v. Sessions*, 387 F. Supp. 3d 1031, 1040–43 (C.D. Cal. 2019)[5] (§ 1252(g) stripped court of jurisdiction to review the Government's discretionary decision to execute removal orders even though the petitioner started provisional waiver application process and had an approved I-130); *Gomes v. Smith*, 381 F. Supp. 3d 120, 122–24 (D. Mass. 2019) (§ 1252(g) stripped court of jurisdiction to grant the alien petitioner relief that "emanate[d] from his removal proceedings" even though alien petitioner started provisional waiver application process); *Mamadjonova v. Barr*, 09-CV-01317, 2019 WL 6174678, at *7 (D. Conn. Nov. 20, 2019) (district court lacked jurisdiction to enjoin the Attorney General's discretionary decision to remove the petitioner while the petitioner pursued a provisional unlawful presence waiver); *Pinto-Barrera v. Sifuentez*, No. 18-CV-00325, 2018 WL 6027114 (W.D. Tex. Nov. 16, 2018) (§ 1252(g)

---

[4] *Karr* is pending on appeal, and a stay of removal has been granted by the United States Court of Appeal for the Eleventh Circuit while the appeal is pending.  No. 20-11144 (11th Cir.).
[5] *Probodanu* is pending on appeal.  No. 19-55869 (9th Cir.)

stripped the court of jurisdiction to review alien petitioner's emergency motion for stay of removal even though alien petitioner started provisional waiver application process).

In *Pinto-Barrera*, a case from the Western District of Texas, the petitioner's applications for asylum, withholding of removal, and deferral of removal were denied, and she was ordered removed. *Pinto-Barrera*, 2018 WL 6027114 at *1. Thereafter, the petitioner married a United States citizen with whom she had a young child. *Id.* The following year, the petitioner's husband submitted an I-130 on behalf of the petitioner, and they attended the marriage interview with USCIS. *Id.* Later that year, while the I-130 was still pending, the petitioner was arrested on suspicion of driving while intoxicated. ICE denied the petitioner's application to stay removal and informed her that she was scheduled for deportation. *Id.*

Pinto-Barrera filed an "Emergency Motion for Injunctive Relief (Stay of Removal)" and § 2241 petition because, like Singh, if her I-130 were approved, she would be eligible to submit an I-212 Application for Permission to Reapply for Admission into the United States after Deportation or Removal and an I-601A Application for Provisional Unlawful Presence Waiver to waive her unlawful presence in the United States. *Id.* And like Singh, Pinto-Barrera was eligible to complete the above applications prior to departing the United States to attend her consular interview in order to return to the United States as a lawful permanent resident. *Id.*

Pinto-Barrera argued that removing her before she could complete the provisional waiver process would violate her regulatory, statutory, and due process

14

rights and would be arbitrary and capricious under the APA. *Id.* She asked that the district court stay her removal until her applications were processed and order her released from ICE custody or schedule a bond hearing in her immigration case. *Id.*

The district court, citing the REAL ID Act, *Idokogi,* and *Fabuluje,* concluded that the REAL ID Act stripped it of jurisdiction to consider a request for a stay of removal. *Id.* at 2. The court determined it could not hear any cause or claim arising from the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders, implying that the petitioner's claim fell within the purview of § 1252(g). *Id.*, citing 8 U.S.C. § 1252(g); *Velasquez v. Nielsen*, No. 18-40140, 2018 WL 5603610, *4 (5th Cir. Oct. 29, 2018).

The court also found that § 1252(g) stripped it of jurisdiction to hear the claims under the APA. *Id.* (citing *Webster v. Doe*, 486 U.S. 592, 599 (1988) ("Section 701(a) . . . limits application of the entire APA to situations in which judicial review is not precluded by statute.")). The court noted that:

> at the hearing, Petitioner conceded that she would still be able to submit her applications and go through the process even if deported, but the process would take longer. While the Court is sympathetic to Petitioner's predicament, her deportation would not cost her any substantive rights under the relevant statutes. It would certainly be more convenient for Petitioner to remain in the United States and preferable from the standpoint of avoiding separating her from her family for a significant period of time, but those interests are insufficient to implicate the Constitution in this case.

*Pinto-Barrera* 2018 WL 6027114, at *3. The district court was "unpersuaded" by opposing decisions from other district courts with some similarities to Pinto-Barrera's case, including *Calderon. Id.* at *3, n. 1.

The United States Court of Appeals for the Third Circuit recently considered on appeal a district court's denial of habeas and injunctive relief by a petitioner attempting to pursue the provisional waiver process. In *Tazu v. Attorney Gen. United States*, 19-1715, 2020 WL 5509699, at *2 (3d Cir. Sept. 14, 2020), the petitioner challenged, in part, the timing of his removal because removing him would interfere with his due process right to stay in the United States while applying for a provisional waiver and while appealing the denial of his motion to reopen. Tazu asked the Third Circuit to "hold that the Attorney General must wait until later—after he finishes exhausting the provisional-waiver process and appealing the denial of his motion to reopen." *Id.*

The Third Circuit found that the district court lacked jurisdiction because Tazu challenged the third act listed in § 1252(g): the Attorney General's "action . . . to . . . execute [his] removal order[]." *Id.* Like Singh, Tazu argued that he "does not contest the discretion exercised to remove him," just that the Attorney General "allegedly lacks the authority to exercise that discretion now." *Id.* at 3. Tazu claimed that deciding to execute a removal order now differs from deciding to do so at some point. But both are "decision[s] or action[s] . . . to . . . execute removal orders." *Id.* (citing § 1252(g)). "After all, 'the act of deciding' means 'the act of settling or terminating (as a contest or controversy) by giving judgment.'" *Id.* (citing Decision, Webster's Third New International Dictionary (1966)). "And to settle or terminate the execution of a removal order, the Attorney General must choose a date for that removal. So the discretion to decide whether to execute a removal order includes the discretion to

decide when to do it." *Id.* (citing *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002)). Both are covered by the statute. *Id.* Thus, the Third Circuit determined that the Attorney General may decide to execute Tazu's valid removal order when he chooses. The court concluded: "Though his challenge may be a fine one, it does not belong in this proceeding. He can raise it elsewhere and must do that in his petition for review before the Second Circuit." *Id.*

Singh does not challenge whether or how the Attorney General may decide to remove him. In fact, Singh concedes that his removal is inevitable under the provisional waiver process. He asks for the opportunity to complete the steps of the process that can be applied for stateside prior to his removal. However, the plain language of 1252(g) states that the Court lacks jurisdiction over any claim by an alien arising from the decision or action by the Attorney General to execute removal orders. This must include the decision as to when to execute Singh's removal order. 8 U.S.C. § 1252(g). And 1252(b)(9) is clear that judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken to remove an alien from the United States shall be available only in judicial review of a final order in a court of appeals. 8 U.S.C. § 1252(b)(9).

Moreover, the Fifth Circuit has been clear, albeit in cases predating the provisional waiver process, that district courts generally lack jurisdiction to stay orders of removal. *See Idokogi v. Ashcroft*, 66 Fed.Appx. 526 (5th Cir. 2003); *Fabuluje v. Immigration & Naturalization Agency*, 244 F.3d 133 (5th Cir. 2000) (per curiam).

As a result, this Court lacks jurisdiction over Singh's request to enjoin the Attorney General from executing his order of removal.[6]

### E.    Section § 1252 as applied to Singh does not violate the Suspension Clause.

Singh argues that application of § 1252 to the facts of his case would violate the Suspension Clause of the Constitution.  *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

Recently, in *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S.Ct. 1959, 1969 (2020), the United States Supreme Court found that "neither respondent nor his amici have shown that the writ of habeas corpus was understood at the time of the adoption of the Constitution to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result.  The writ simply provided a means of contesting the lawfulness of restraint and securing release."  In *Thuraissigiam*, the petitioner was not seeking a release from custody.  He was seeking to obtain additional administrative review of his asylum claim, and ultimately to obtain authorization to stay in the United States.  Although Singh is not seeking review of an asylum claim, he is not simply seeking a release from custody.  Rather, he is primarily asking to stay his removal and then to be released to pursue the provisional wavier process.  Singh does not allege that he

---

[6] Section 1252(g) also deprives the Court of jurisdiction to hear the claims under the APA. *See Webster v. Doe*, 486 U.S. 592, 599 (1988) ("Section 701(a) . . . limits application of the entire APA to situations in which judicial review is not precluded by statute."); *Tazu v. Attorney Gen. United States*, 19-1715, 2020 WL 5509699, at *2 (3d Cir. Sept. 14, 2020).

is being deprived of the right to challenge his actual detention. Nor does Singh allege that his confinement is unlawful. Thus, Singh is not simply contesting the lawfulness of his restraint or attempting to securing his release, and the means to do that is all the writ affords. *Thuraissigiam*, 140 S.Ct. at 1969. Therefore, under the reasoning of *Thuraissigiam*, the claim fails.

Even if his request is not foreclosed by *Thuraissigiam*, Singh cannot establish a Suspension Clause violation. To determine whether a jurisdiction-stripping statute such as § 1252(g) violates the Suspension Clause, the Court first determines whether a habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding the petitioner's detention or removal. *Boumediene v. Bush*, 553 U.S. 723, 739 (2008). A court should consider the following factors: "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Id.* at 766. After confirming that the petitioner is not prohibited from invoking the Suspension Clause, courts consider whether the substitute for habeas corpus provided by the jurisdiction-stripping statute is adequate to test the legality of the petitioner's removal. *Id.*; *Castro v. United States*, 835 F.3d 422 (3d Cir. 2016).

Singh is not prohibited from invoking the Suspension Clause. Although Singh is not a citizen, he has been in the United States for over 21 years. ECF No. 16-1 at 1. He has been abiding by his order of supervision since 2006. *Id.* Singh has no

criminal convictions, is married to a U.S. citizen, and has three children who are U.S. citizens. ECF Nos. 1, 1-5. Singh has been working in the U.S. and paying taxes. ECF No. 1-4. These contacts establish Singh within the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990).

As to the nature and site of apprehension and detention, Singh was arrested suddenly and without warning at his home with his wife and children at 6:30 a.m. on the morning of June 8, 2020. As the Supreme Court has said, the writ of habeas corpus "has been the judicial method of lifting undue restraints upon personal liberty." *Price v. Johnston*, 334 U.S. 226, 269 (1948).

Finally, the practical obstacles to invoking the writ of habeas corpus are minimal and the kind of "incremental expenditures of resources" that the Supreme Court deemed not dispositive to the question of granting the writ. *Boumediene*, 553 U.S. at 769.

Thus, the question becomes whether the substitute for habeas corpus provided by the jurisdiction-stripping statute is adequate to test the legality of Singh's detention. At the Hearing, counsel for Singh argued there was no meaningful substitute remedy for habeas relief. Although he could pursue the process from abroad, Singh argues that "it is simply not an option" because his wife will be rendered a single parent to the three children. ECF No. 1 at 8.

The undersigned identified three cases within this Circuit that, although not on-point, considered whether the substitute for habeas corpus was adequate to test the legality of the petitioner's claim.

In *Pinto-Barrera*, discussed above, the district court recognized that there was "an open question as to whether 8 U.S.C. § 1252(g) is unconstitutional as applied to this set of facts under the Suspension Clause." *Pinto-Barrera v. Sifuentez*, 18-CV-00325, 2018 WL 6027114, at \*2 (W.D. Tex. Nov. 16, 2018) (citing U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.")).  The district court noted that the petitioner could still submit her applications and go through the process even if removed, although the process would take longer.  *Id.* at \*3.  Also, Pinto-Barrera "had an adequate and effective substitutionary remedy" in the form of an I-246 Application for Stay of Deportation, which she had filed with ICE.  And because Congress explicitly barred the Court from reviewing such discretionary decisions, the court found that Pinto-Barrera could not succeed on a challenge under the suspension clause.  *Id.*

The same court, in *Mohumud v. Joyce*, No. 18-CV-102, 2018 WL 1547848, at \*2 (W.D. Tex. Mar. 29, 2018) and *Benitez-Garay v. Dep't of Homeland Sec.*, 18-CV-422, 2019 WL 542035, at \*9 (W.D. Tex. Feb. 8, 2019), found that there was no violation of the Suspension Clause because the petitioners could pursue motions to reopen and requests for stay of removal with the BIA.  In all three cases from the Western District of Texas, the district court found that the BIA's procedures afforded

the petitioners an "adequate and effective substitutionary remedy." *Pinto-Barrera*, 2018 WL 6027114 at *2; *Mohumud*, 2018 WL 1547848 at *2; *Benitez-Garay*, 2019 WL 542035 at *9 (citing *Mohumud*, 2018 WL 1547848).

Additionally, in *Hamama v. Adducci*, 912 F.3d 869, 875 (6th Cir. 2018), *cert. denied*, 19-294, 2020 WL 3578681 (July 2, 2020), the Sixth Circuit found that the REAL ID Act did not violate the Suspension Clause because, when Congress stripped the courts of jurisdiction under § 1252(g), it provided the same scope of habeas-type relief through a petition for review in a court of appeals. *See also*, *Rranxburgaj v. Wolf*, 19-2148, 2020 WL 5033408, at *5 (6th Cir. Aug. 26, 2020).

At the Hearing, counsel argued that Singh has no adequate or effective substitutionary remedy because he would not be able to seek relief abroad since his daughter is disabled. The Court has sympathy for this difficulty, and the myriad others to come for Singh and his family. However, there is nothing jurisdictionally that would prevent him from seeking relief after he is removed. *See Sheiko v. Giles*, 19-CV-1859, 2019 WL 7166059, at *6 (C.D. Cal. Oct. 18, 2019), *reconsideration denied*, 2019 WL 7166058 (C.D. Cal. Oct. 23, 2019) (removal to Haiti does not render the petitioner without access to a meaningful opportunity to obtain review of the removal order, although it would be more difficult). Nor does Singh allege that he faces persecution or would be physically unable to avail himself of the process. *Cf. Compere v. Nielsen*, 358 F. Supp. 3d 170, 173 (D.N.H. 2019) (applying the Suspension Clause because if the petitioner was removed Haiti, he would likely be detained upon his arrival or forced into hiding, and he did not speak the language well; thus,

22

although he could jurisdictionally pursue the motion, he would have no meaningful opportunity to do so); *Diaz-Amezcua v. Barr*, 402 F.Supp.3d 963 (W.D. Wash. 2019) (applying the Suspension Clause where the petitioner did not have an adequate alternative to judicial review of his motion to reopen if he was removed because of the serious threat to his personal security in Mexico). Singh has the ability to complete the process abroad. He provides no facts indicating that he would lack a meaningful opportunity to pursue his claim once removed.

Finally, Singh also does not state whether he has filed a motion to reopen or a motion to stay with the BIA, and it does not appear that he has filed a petition for review in a court of appeals. Singh may, and likely does, have other appropriate avenues to seek relief. Thus, Singh cannot state a viable claim under the Suspension Clause.

## III.    Conclusion

Because this Court lacks jurisdiction over Singh's claims, IT IS RECOMMENDED that the Motion for Temporary Restraining Order (ECF No. 1) be DENIED and the Petition (ECF No. 1) be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed,

unless a party shows good cause and obtains leave of court.  The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on November 17, 2020.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE